Case No. 17-2285 United States of America v. Sean Fitzgerald Oral argument not to exceed 15 minutes per side Mr. Fry for the appellate Good morning. Chief Judge Badshelder, and may it please the court, my name is Avi Fry. I'm from the Gibbons Law Firm in Newark, New Jersey, here on behalf of the defendant appellate Sean Fitzgerald. I'd like to reserve three minutes for rebuttal, please. Your Honors, this case presents a question of first impression in the federal judiciary, how to define the word operates within 18 U.S.C. section 342. In answering that question, this court should define operates as control of movement of a common carrier under the well-established rule of lenity, and that is for three reasons which I intend to discuss today. First, that the word operates within the context of the statute is at least ambiguous. Second, that defendant's interpretation is correct and also at least equally possible or equally reasonable as the case law requires, a point that the government in fact concedes in its brief. How is it reasonable that a person would think it was legal to show up drunk and perform a bunch of preparatory steps to transport passengers on an airplane? I just don't get that. That's a fair question, Your Honor, but the rule of lenity requires, and our criminal system of justice requires, specific notice as to exactly what conduct is criminal and what specific penalty will attach. So your argument is that he must have thought it was okay to show up drunk as a co-pilot as long as he, what, didn't hold the yoke when the plane's flying? Our argument, Your Honor, is that first of all, he certainly had notice that there was a criminal statute in Michigan under which he was originally indicted. That was a misdemeanor punishable by up to 93 days in prison for operating as a member of a ground crew. He did not have the more specific notice as to that his conduct was a felony punishable by up to 15 years, in fact a strict liability statute, because the meaning of the term operates is ambiguous as to exactly what conduct was prohibited. So if he didn't have notice, that means you think it was reasonable of him to think he could show up drunk preparing to operate this plane? I don't think so, Your Honor. I think it was reasonable for him to assume that the statute was ambiguous as to whether or not this particular felony statute applied to his conduct. And this jibes, Your Honor, with a point, your question jibes with a point that the government has made, which is that his conduct was in essence malum in se. It was bad conduct and therefore he should have known. In the cases applying the rule of lenity, many of which we've cited to this court, some decided by this court, including United States v. Miller, which was authored by Judge Griffin, the conduct of the defendant was bad conduct. It was reprehensible conduct. Take, for example, the Miller decision. In that case, the defendant, in a fraudulent bank statement, wrote down the names of a number of individuals alleging they were present at a meeting and agreed to something which never in fact happened. The question in that case was whether that was use of the identities of those individuals for purposes of the aggravated identity fraud statute. It was a given. He should have known and had fair notice that his conduct was unlawful under the bank fraud statute, but the question is did he have the specific notice that it was unlawful under the identity fraud statute? And there, because it was ambiguous as to that question, the rule of lenity was applied. The same is true in a number of decisions by the United States Supreme Court. For example, one from 1932, McBoyle v. United States, that was about whether or not, ironically, an airplane was a vehicle. In that particular case, the facts show that defendant had knowingly taken a stolen airplane across state lines, clearly reprehensible conduct of which he should have had notice it was not lawful. However, the question was did that violate the particular statute in issue there? And because that question was ambiguous, the rule of lenity was applied. It's the principle of fair notice which is fundamental to the rule of lenity. Your Honors, I would also note in support of application of the rule of lenity here that the word operates, as all parties agree, is not defined in the statute itself. There is no pertinent legislative history, and moreover, it's a broad term of general application. Its precise scope is unknown, exactly as in the cases I just mentioned before, words like use, words like proceed in United States v. Santos, words like vehicle in the McBoyle decision. In addition, Your Honors, under the United States v. Miller, in order for a term in a statute to be ambiguous such that the rule of lenity applies, it need only be the case that the defendant's definition is equally possible or equally reasonable. And that is a point that the government has conceded in this case. And I would point, Your Honors, to pages 22 and 23 of the government's brief. In that portion of the government's brief, they state that Fitzgerald's understanding of the legislative purpose may well be the case. And they say of their own understanding of the legislative purpose only that it is, quote, equally possible. Well, since all parties agree that the legislative purpose must sharpen the definition of operates here, the government has conceded the case away. They've conceded that the definition of operates should be control of movement. And in the same breath, they've conceded that the rule of lenity should properly be applied. But even putting to the side the government's concession, Fitzgerald's definition of operates is, in fact, correct for the simple reason that the context of this statute provides the proper plain meaning of the term. This is a statute that applies to common carriers and common carriers only. Can this airplane fly without somebody having done the preparatory steps that your client did? Yes. So you don't have to call in your flight plan. You don't have to program the navigation. You don't have to turn on whatever that device was that powers things up. Under FAA regulations, no. Those are requirements. So if they're required to actually get the plane in operation and take off, I'm just trying to figure out why, just logically speaking, that that's not operating. Well, Your Honor, that's a... Why does the plane actually have to move? Your Honor, that is a question that was never, in fact, put to the jury because of the definition of operates that the district court gave in its jury instruction. If the district court had instructed the jury properly and they had been told to answer the question as to whether Fitzgerald's conduct that day was sufficiently proximate to control of movement, then, Your Honor, we wouldn't have an argument. Because that was the central question in the case. That's what all of the defense proof went to. The defense argued that his conduct was too remote for movement and, in fact, that the plane was never going to move because everyone knew he was highly intoxicated. Instead, what the district court did in this case was it instructed the jury that it should determine whether or not his conduct was proximate to the exact phrase was actual operational or functional requirements. For flight. For flight. For the flight. For the flight, correct. With the word requirements being the critical noun here. The problem with this... There's some words after that, too, that further sharpens it. It goes on to say... That's correct. The problem with this definition is twofold. First, it does not make clear that movement is the essence of what the statute was designed to prohibit. Getting back to Judge McKee, why should movement be so critical? Keep in mind, in my question, I didn't use the word movement. No, that's... I used the word operate because you're injecting the word movement in as a proxy for operate. It's not in the statute. It's not in the statute, but there's nothing in the statute either way. All parties agree that operate is not defined. Why do you think movement is so important? A couple of reasons. First and foremost, the context of the statute. It controls... Excuse me. It regulates only common carriers. What common carriers have in common, clearly, is that they transport passengers. So movement is at the center of what Congress was trying to regulate. But we also cite to a number of statutes. Federal statutes, state statutes, federal regulations, which are of two types. First, there are those that regulate the aviation industry for purposes of safety. Then there are those that are more traditional drunk driving statutes and federal regulations. Critically, both types use the word operates with regard to vehicles. And there's a number of cases with regard to both that we've cited. And in all of those instances, they understand operates to be about movement. For example, in one of the cases, the Coleman decision under the federal regulation about drunk driving the national parks, they used the phrase engaging the motive function. This further supports our understanding. Our point is, Your Honors, that movement is at least, given the government's concession, equally possible as what Congress intended to prescribe. And as a result, the rule of lenity is appropriate. What jury instruction did you ask for? This was, in the words of the district court, an iterative process. So from the beginning, at the very beginning, the defense asked for a bright line rule and said, when the engines start or when passengers are boarded. That's not movement? Even without movement, you said that would be operating? Well, I think it's a jury question first and foremost, Your Honor, whether starting the engine is sufficiently proximate to movement. Okay, so we don't actually need movement under your definition? We need to just get proximate to movement? That's correct. Why isn't all these preparatory steps that he did proximate to movement as well? They might have been, Your Honor, but that was not the question that was put to the jury because the jury instruction was he focused on flight rather than movement. It seems like flight is even stricter than movement, I think. I mean, isn't that kind of a higher standard than movement? Your Honor, if the phrase in the jury instruction, actual operational or functional requirements had been deleted, I would agree with you. But I don't think flight is the critical word here. I think actually the word requirements is. Because the question is whether his conduct was proximate to operational or functional requirements for flight. And in the context of the trial as a whole, the government's proof, the government's expert, its closing argument, this synced perfectly with the notion that if he did any of the preparatory steps listed on the aircraft's instruction manual, well, in that instance, he would have been guilty. And so the jury instruction effectively directed a verdict against him because it was uncontested that he performed some of the functions in the pre-flight instruction manual. He did all of them, did he? No. Which ones did he not do? He did an indeterminate number. He was observed to do the following. He was observed to do, he was videotaped doing a portion of the external walk-around. There was an audio tape, a recording of him calling for, on two occasions, calling the air traffic control tower for the clearance information. He was observed by the pilot to be touching and maybe setting what's called the standby altimeter, which is a backup redundant feature that measures the altitude. He was observed entering some information into the flight management system. The government has further argued, and we have argued in response, that it's not entitled to this inference, but the government also argued that he must have performed every step from the external walk-around up to the standby altimeter, which include the following. If I could just, I see that I'm out of time, but I'll just finish Your Honor's question. So basically there's the external walk-around. That's followed by what's called the power-up check to see if when electric current from a generator is put through the machine, all the switches are in the right place so nothing moves automatically at that point. Then there's the systems check, and he got a small piece of the way through the systems check, which is the standby altimeter. That's, if you allow the government's proof, which we say even granting that doesn't get you there, and that's for two reasons. The first being all of this was in essence a charade because everyone knew beforehand that he was intoxicated and that he was not going to fly the plane. The pilot, air traffic control, long before he ever stepped foot on the tarmac, the decision had been made. This flight- Did they set him up? Is that what you're saying? I wouldn't describe it as a setup. I would say they were all biding their time until the police arrived. Well, I mean, he's in control of the plane. I mean, he actually could take off, couldn't he? I mean, it would be a violation of everything. He wouldn't have authority over anything, but you're saying he could not. I mean, he could have. And I return to the point, Your Honor, that that was a jury question. The jury should have been instructed specifically. I recognize you're out of time, but one more question if the chief will let me have it. Unlike most common carriers like a bus or maybe even a train, airplanes are very sophisticated. They're very technologically sophisticated. And I've been told that basically the pilot takes off with the plane, lands the plane, but in the air the autopilot takes over and the plane basically flies itself. And it flies itself because it has been programmed before movement by the pilot that he has inputted all the data as to the flight navigation and everything else. And all that controls how that plane flies. So, I mean, looking at the difference between a sophisticated airplane and a bus, isn't this preparatory steps that he took important to the movement anyway? I mean, do you agree with me there's a distinction between a bus and an airplane because of this? Yes, and I don't mean to sound like a broken record, but I would repeat this point in response, Your Honor. Whether or not programming the flight management system is sufficiently proximate to the movement of the aircraft or sufficiently important to the movement of the aircraft that a conviction was appropriate in this case is a fair question, but it's not the question that was put to the jury. The jury should have been instructed that way. Instead, they were instructed that if they found any actual operational or functional requirements for the flight, subtracting out administrative or clerical tasks, none of which was defined, all of which obscured the issue, and which in the context of the trial at whole made it seem as though if he had performed any steps such that they didn't even need to determine whether he had programmed the flight management system, then in that case, Your Honor, we're talking about a different case. And we would have also been arguing, I mean, his entire case at trial was premised on the fact not only that his conduct was remote, but that the idea that he had control of the flight management system was actually a fabrication. Everything he did was a nullity because, as I mentioned just previously, everyone was biding their time until the police arrived, arrested him, and took him out of the cockpit. Thank you, counsel. Thank you, Your Honor. May it please the Court, just in present for the United States, I tried the case below alongside one of my colleagues. Mr. Fry starts with the rule of lenity, so I'll start there as well. The rule of lenity is, of course, a tool of statutory construction, and it is the last tool of statutory construction that is appropriate only where, as the Supreme Court has said, there is grievous ambiguity in the statute and all other tools of statutory construction have failed. Well, where does statutory construction begin? It begins with the plain meaning of the word in the statute, the dictionary definition. And then, as the Supreme Court has said in Best Foods using the sharpening language, or this Court has said in Miller, it's appropriate to interpret that dictionary definition in the context of the statute, and then it's appropriate for the district court to tailor jury instructions according to the proofs that the parties expect to appear at trial. And that is precisely what Chief Judge Yonker did in this case. He started with the dictionary definition that both parties have used in this case, that operate means to run or control the functioning of something, and then looked at the statute. What sort of operation is in the statute? The word operate comes up in many contexts. In Best Foods, it came up in the context of the CERCLA statute. And in this case, it comes up in the context of common carriers, which transport passengers, and there's, of course, great risk and danger to those passengers if those common carriers are operated under the influence of alcohol. And the district court and the parties did engage in this iterative process below where there were a number of proposals made, and there's an extensive record that explains why the district court came to the conclusion it ultimately did with respect to the appropriate definition of operate. But as explained by the district court, in short, what Chief Judge Yonker was doing was trying to separate out what really mattered, the tasks that were proximate to the functional requirements for flight, as opposed to those tasks which were simply administrative or clerical. There's a line there. But ultimately, the determination of whether that line is crossed is a jury question, and a question that should be led to the jury, consistent with how juries are instructed in all other sorts of cases. So Mr. Fry here says that operate means movement, but it's just not so, not from the dictionary definition, not from the tailoring to the facts of the case or the interpretation in the context of the statute. In the appellant's brief, they talk about this essential function test, and the reply brief quotes back to the principal brief, but there's no source for this essential function test in law. There's no case law cited by the appellant with respect to that. And Mr. Fry says in his reply brief and also said here to the court this morning that the government conceded that his interpretation is equally likely, and so I want to clear that up as well. The government made no such concession. What the government said in its brief was strictly an elaboration upon what everyone agrees on, which is there is no legislative guidance or case law or on-point authority that can tell this court what it ought to do. This really is a question of first impression as to what operate means in Section 342. And so Mr. Fry says, well, the purpose is with respect to movement. And so the government said, well, we don't know what the purpose is. It could be that the purpose is with respect to movement. It could be that the purpose is something else. But even if what Congress was trying to do in enacting 342 was to regulate the purpose of or was to meet the purpose of prohibiting the movement of common carriers, they could have done so by properly prescribing activities that are done in preparation for the common carrier, in this case an aircraft, to move. And I think that's exactly how the court below interpreted the statute, how it instructed the jury and what motivated the rulings on the motion to dismiss and the denial of the Rule 29 motion because, of course, what Mr. Fitzgerald did when he was in that cockpit for more than an hour on the morning of August 25, 2016, is he was preparing the aircraft to move. One of the things he did was he turned on the APU, the auxiliary power unit, which is a critical step in the process. But he's liable really for being in the cockpit when the APU is on, irrespective of whether he actually turned it on. And I want to explain that a second because, first, what is the auxiliary power unit? The APU is a small engine. There's some dispute in the briefing about whether that's accurate. But three separate witnesses testified at trial that the APU was an engine. The captain of the flight, Manuel Ramirez, said at page ID 537 and 38 of the record, the APU is just like a little third engine. Aiden Buck, the line technician, page ID 648 to 649, said it is basically a jet engine. And the government's expert, Joseph Cromack, at page ID 702 to 03, said in most cases it's really just a small jet engine. And, again, he said it's essentially a small jet engine. So there was a dispute about who turned the engine on. And with respect to the sufficiency challenge, this court, of course, assumes or views the evidence in the light most favored of the government and therefore has to assume that the jury found that Mr. Fitzgerald turned the APU on. But irrespective of whether he turned it on, there is no dispute that he was in the cockpit at the end of the more than hour that he was on the plane when the APU was running. Well, why is the APU being on such a critical step in the preparation of the plane to fly? Well, it's because it powers all of these systems on the airplane that before the airplane ever moves, before the blocks are removed or before the main engines are turned on, what the APU does is it controls the landing gear. It controls the weather radar. It controls the flaps and the doors of the airplane. I think there's a hatch at the nose of the plane where some component comes out, and all of those components are powered by hydraulic power, which there was testimony below from Captain Ramirez that hydraulic power is extremely forceful. It can crush a human bone. So if a technician like Aiden Buck is near the plane at the time that those components are in operation because the APU has been turned on, and a drunk pilot moves a flap when he's not supposed to and the technician's arm is in the way, that could cause serious harm. If the weather radar is accidentally turned on, it sounds innocuous enough, at least to me as a lawyer, but if the weather radar is turned on on the ground, it exposes the people immediately surrounding the plane to extreme amounts of electromagnetic radiation. If the landing gear is accidentally set to up while the plane is on the ground, it should be set to down, or that switch is accidentally flipped after the APU has been turned on, the plane could collapse onto the tarmac, obviously posing a serious risk of physical harm to anyone surrounding the plane or other people on the plane. And for those reasons, it is fair to find that what Mr. Fitzgerald actually did that morning was to operate the aircraft. Now, Mr. Fry also made the point that everyone decided that the plane was never going to fly at the point that Mr. Fitzgerald stepped onto the tarmac. I also think that's not an accurate reflection of how the testimony came out in trial. The two co-pilots, Mr. Ramirez and Mr. Fitzgerald, arrived at the airport around 7 o'clock that morning, and Mr. Ramirez, Captain Ramirez, had determined that he had to take action with respect to Mr. Fitzgerald's intoxication. But what he did is he called his company at that time, and he said, Mr. Fitzgerald, go wait at the FBO, the Fixed Base Operations Center, the little area where passengers and pilots can wait before going out in the tarmac. And at that time, Captain Ramirez remained in the parking lot and called the company to figure out what was going to do. And there were a series of phone calls over the succeeding minutes, and while they were trying to determine what appropriate action to take, and when Mr. Ramirez then entered the FBO, he found that Mr. Fitzgerald had already proceeded out to the aircraft. Contrary to his instructions as the pilot in command. At a later point, it was determined, it is true, air traffic control, and Mr. Ramirez and the company decided that that plane was not going to leave. But meanwhile, Mr. Fitzgerald was on it, doing whatever he was doing for that hour. And I think the only reasonable review of the record, or at least viewing that record in the light most favorable to the government, what this court has to conclude is that Mr. Fitzgerald was conducting those multiple steps contained within the operations manual, both in the normal power-up check and the systems check that are conducted in parallel that Mr. Ramirez testified to, that he both knew as a trained pilot on the Challenger 604, and as well as that he knew from supervising Mr. Fitzgerald for the 25 to 30 times that they had flown together. I think if you look at the statutes and regulations cited by Mr. Fitzgerald in his brief, he wants to look to state law, which is not appropriate for the reasons explained in the government's brief. He also wants to look at other federal regulations that's not appropriate for reasons explained in the government's brief, namely that congressional statutes shouldn't be interpreted in accordance with regulations promulgated by agencies. But even if you look at each of those authorities, as the government has explained in its brief, they don't support his position. All those authorities, in fact, support the position that what Mr. Fitzgerald was doing that morning was operating the aircraft. Unless the court has any questions, the government respectfully requests that this court affirm the judgment of the district court. Well, here Mr. Fitzgerald, at least according to your position, did all the preparatory steps to prepare the aircraft. Is that right? I don't know if he did all of the steps. Is that your position or which ones do you concede he did not do? Well, Judge Griffin, the record below shows that there is a continuum of steps that need to be executed from really the time that the pilot arrives at the airport until the plane is in the air. The district court said that. The government's expert at trial testified to that. And we know the plane never moved, and so there was some point at which that continuum stopped. He didn't turn the jet engines on. Correct. There's no dispute that the main engines were not turned on. Did he do everything else up to that point? Well, viewing the evidence of the light most favorable to the government, we have to assume he did much of what was required up to that point. I thought he did everything. I don't think it's fair to read the record to say he did everything. There are these two checklists that the government introduced into evidence. There's the normal power-up check and the systems check. And I think we got maybe 25 or 30 steps into those checklists. Okay, 25 or 30 steps into how many steps were there then? I don't recall off the top of my head. And then there may have been other things after those checklists were completed that the pilot would proceed on to. We know that they were at least a half an hour away from the scheduled departure time, and presumably activities would have taken place during that time. But we have direct evidence of what witnesses actually observed him doing. And then the government argued, and it's fair for the jury to infer, and this court has to assume the jury found, that he performed many of the other steps that would have been conducted at the same time that those steps were conducted. So the district judge left up the factual determination to the jury, but would you concede that he would be entitled to a directed verdict or verdict of acquittal if he had only done a few steps? I mean, is it the number of steps that he did that made it a jury question? And if it is, how many steps do you have to do to get to that point, I guess, is my question. Well, Judge Griffin, of course, jury instructions could always be more and more detailed. We could always have a court say, if you find this, you must convict. If you don't find that, you must acquit, et cetera, et cetera, et cetera. And that's in all sorts of cases. Think about possession, which this court is— I guess my question is, what's the tipping point? Is it the input into the navigation system that really lets the jury determine whether he's operating it, or is it something else? What do you need, like the next case, what do they need to do to get to this point? Well, I think it should still be a jury question in the next case, because the jury should be instructed that it has to be something functional related to the flight. There are too many fact patterns to imagine what could arise in the next case. It could almost always be a jury question, I guess. I believe so. Of course, if this court found that, as a matter of law, what he did was not operation, that's a separate question. But if the question is, well, where is the bright line, what can you do and what can't you do, I don't think the court has to decide that here because the task is to look at all of what he did and figure out whether that crossed the line. That's what the jury found in this case, and appropriately, given the importance of the steps that he conducted. And for that reason, the government asks that the court affirm. Thank you. Thank you. Thank you, Your Honors. A couple of points I'd like to make in rebuttal. First, Judge Griffin, you've gotten exactly to the heart of the issue, which is where to draw the line in a complex machine like an airplane, especially an airplane relative to other common carriers, when there are so many functions that happen before it ever moves. But if you didn't specifically ask the court to instruct the jury that operation required movement, why are we looking at that now? Your Honor, the defense did argue in multiple ways throughout the course of the proceedings that movement was essential. It argued that by first saying passengers aboard are engines running because movement was critical, and throughout in its objections. Passengers aboard, how does that implicate movement? Well, passengers typically board the plane after the engines are running, so that would be a later point, and it's usually directly before the plane begins to taxi and take off. So setting the navigational system so that the plane can actually fly someplace reliably is too far removed. That was the argument that was made below, particularly because he... But it's not related to movement. Your Honor, whether or not it was related to movement, first of all, was a jury question, and that's not the way that the jury was instructed in this case. Yeah, but my problem is I'm trying to figure out at what point you asked the district court to instruct the jury that operation required movement, which is what you're saying now. That's correct. At several different junctures, the defense below objected to the court's instruction on the basis that it was overbroad, that it encompassed much too much conduct too remote from flight, and flight, of course, in the case of an air common carrier, is the movement of that plane. It was also well understood by the government and by the district court that the objection to the entire theory was that the government's theory of the case and to the jury instruction was that it was too remote from the actual flight or movement of the aircraft. In drawing the line in which particular steps... But I'm still confused. I don't think you answered Judge Batchelder's question. I thought your premise was movement meant the wheels had to be turning on the plane, for lack of a better description. But you don't seem to be saying that. You're saying if passengers are on board and the engines are running, even if the plane isn't, quote, moving, end quote, that's movement. Well, it could be sufficiently proximate to movement that it's within what Congress intended. So the plane doesn't actually have to be rolling someplace to have the conduct encompassed by operate, right? No, it does not have to be rolling. So all we're talking about is really the number of steps. And that is ambiguous. Why isn't that a prototypical jury question? It is a jury question, and if the jury had been properly instructed, then I don't think we would have an argument here that he was entitled to a new trial. But the jury wasn't instructed that it had to determine whether the steps he performed were sufficiently proximate to movement to warrant a conviction, particularly given the fact that all parties conceded that he was never. So really your whole case turns on whether the word movement had to be in the statute. Excuse me, had to be in the jury instructions. Your Honor, as I said, I would say that the word movement did not have to be there. If it had said directly and proximately linked to movement, you said you wouldn't have a case. That's true. The jury instructions have to have a word in it that the statute does not have. I don't think it has to have the word movement. I think it had to be a different instruction than what was given. So in place of, for example, I may have said this before, but the instruction says directly and proximately linked to actual operational or functional requirements for flight. If it had said delete the phrase actual operational or functional requirements, then I think the instruction is fine. But I think what happens in that phrase, first of all, which is very opaque and which has no obvious inherent meaning, it's somewhat circular insofar as it defines operates in terms of an operational requirement. But more to the point, it makes the focus on requirements for flight, which played directly into the government's case, as the government argued in summation. The government says now. It's not sure exactly where it would draw the line. But what the government told the jury in its argument was you have four questions. Did he perform any step, any step in the external walk-around, any step in the systems check, any step in the normal power-up check? And that played hand-in-glove with the instruction that was given, which focused on requirements. So the jury should have just tried to figure out whether any of those steps, and I'm now taking out the language that you asked to have taken out, any of those steps were directly and proximately linked to flight? That's correct, Your Honor. I sure don't see how that helps the jury to figure this out at all. But your time has expired, and we appreciate your argument. The case will be submitted.